IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| GUIDEONE INSURANCE COMPANY (f/k/a GUIDEONE MUTUAL INSURANCE COMPANY) and GUIDEONE NATIONAL INSURANCE COMPANY,<br><br>    Plaintiffs,<br>v.<br><br>PICC PROPERTY AND CASUALTY COMPANY, LTD, SHENZHEN BRANCH, and PICC PROPERTY AND CASUALTY COMPANY LTD.,<br><br>    Defendants. | No. 4:23-cv-00493-RGE-WPK<br><br><br>**ORDER DENYING DEFENDANTS' PRE-ANSWER MOTION TO DISMISS** |

**I.    INTRODUCTION**

Iowa-based insurers Plaintiffs GuideOne Insurance Company and GuideOne National Insurance Company (collectively "GuideOne"), sue China-based reinsurers Defendants PICC Property and Casualty Company, Ltd., Shenzhen Branch ("PICC Branch"), and PICC Property and Casualty Company, Ltd., ("PICC"), invoking the Court's diversity jurisdiction and alleging breaches of reinsurance contracts. Presently, Defendants move for the pre-answer dismissal of Plaintiffs' complaint, alleging insufficient process and service of process. Defendants argue two means of service were ineffective: service upon a domestic agent and service through the Iowa Secretary of State. According to Defendants, the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 ("Hague Convention"), 20 U.S.T. 361, T.I.A.S. No. 6638, provides the exclusive permissible means for service in this case.

The Court finds Plaintiffs successfully and effectively served process on Defendants'

contractually appointed domestic agent, an Iowa-based law firm. As such, the Hague Convention does not apply, and the Court need not address the sufficiency of attempted service through the Iowa Secretary of State. For the reasons stated below, the motion is denied.

## II. BACKGROUND

### A. Factual Background: Relevant Entities

Defendants identify themselves by describing PICC as "a property and casualty insurance company incorporated in, organized under, and existing under the laws of the People's Republic of China with its principal office located in Beijing, Peoples Republic of China." Defs.' Br. Supp. Mot. Dismiss 2, ECF No. 13-1. Defendants make no similar assertions regarding PICC Branch, instead identifying PICC Branch as a "branch office of PICC" as follows: "Defendant PICC Property and Casualty Company, Ltd., Shenzhen Branch, is a branch office of PICC Property and Casualty Company, Ltd. located in Shenzhen, People's Republic of China." *Id.* Neither Plaintiffs nor Defendants allege PICC Branch maintains a corporate existence separate from PICC. Counsel for Plaintiffs affirmatively asserts PICC Branch does not maintain a separate corporate existence and appears to have listed PICC Branch as a party to the present action as a cautionary measure. Pls.' Resist. Defs.' Mot. Dismiss 7 n.3, ECF No. 14; Mot. Hr'g Tr. 20:2–6, ECF No. 24.[1] Counsel for Defendants expressly denies knowledge regarding, and refuses to affirmatively assert whether, PICC Branch maintains a formal corporate existence separate from PICC. ECF No. 24 at 19:15–23.

Plaintiffs are both Iowa corporations. First Am. Compl. ¶¶ 8–9, ECF No. 6. Career General Agency, LLC is an "affiliate" and "subsidiary" of GuideOne. *Id.* ¶ 15 ("affiliate"); ECF No. 14 at

---

[1] Plaintiffs refer to PICC and PICC Branch collectively as "PICC" throughout their briefing and in their complaint. The Court does not adopt this convention, instead using the terms PICC and PICC Branch throughout this order.

2

4 ("subsidiary"); Noga Decl. Supp. Pls.' Resist. Defs.' Mot. Dismiss 1, ECF No.14-2 ("subsidiary . . . and affiliate"); ECF No. 24 at 24:11–31 ("subsidiary and affiliate").

### B. Factual Background: The Contracts and Dispute

Career General entered into a "Binding Authority Agreement" with PICC Branch. Defs.' Ex. A Supp. Deng Decl. Supp. Mot. Dismiss 1–2 (Binding Authority Agreement Excerpt), ECF No. 13-3. The Binding Authority Agreement authorized Career General to bind reinsurance underwritten by PICC Branch. *Id.* That agreement identified Career General and PICC Branch as the parties to the agreement, describing Career General as the "Coverholder," and in the plural form, PICC Branch as the "Underwriters." *Id.* at 1. That agreement also designated Iowa as the forum for resolving disputes and a particular Iowa law firm, Nyemaster Goode, P.C., as PICC Branch's agent for receiving service of process. *Id.* at 2; *see also* ECF No. 14 at 4–5.

Material language from that agreement provides:

> 42.1 The Coverholder and the Underwriters agree that all matters in difference between them arising under, out of or in connection with the Agreement, shall be submitted to the Federal District Court sitting in the State specified in 42.1 of the Schedule [Iowa]. In the event that the Federal District Court determines it does not have jurisdiction over any such matter, the parties expressly agree that such matter shall be submitted to the appropriate State Court in the State specified in 42.1 of the Schedule [Iowa]. Service of process upon Underwriters may be made upon and shall be accepted on behalf of Underwriters by their appointed agent for this sole purpose, [Des Moines Iowa-based law firm] Nyemaster Goode PC.
>
> 42.2 All matters related to this Agreement, including but not limited to the negotiation, formation and performance of obligations under this Agreement shall be governed by and construed in accordance with the substantive laws of the State of Iowa.

ECF No. 13-3 at 2; *see also* ECF No. 14 at 4–5; ECF No 6 ¶ 17.

Subsequent to execution of the Binding Authority Agreement, Career General issued reinsurance binders ("Reinsurance Binder Agreements") for specified underlying GuideOne insurance policies pursuant to the Binding Authority Agreement. ECF No. 6 at 4; ECF No. 14-2

3

¶ 9. Each Reinsurance Binder Agreement identifies "PICC Property and Casualty Co. Ltd." as the "Reinsurer" and "GuideOne Mutual Insurance Company" or "GuideOne National Insurance Company" as its "Reinsured." ECF No. 14-2 ¶ 10. Each Reinsurance Binder Agreement states: "Career General Agency, LCC is an authorized Coverholder for PICC Property and Casualty Co. Ltd. pursuant to Agreement No. RPF200400." *Id.* ¶ 11. "Agreement No. RPF200400" is an express reference to the Binding Authority Agreement. *Id.* No party asserts these Reinsurance Binder Agreements reference PICC Branch. In other words, PICC is the reinsurance "underwriter" in the Reinsurance Binder Agreements. The parties expressly agree that without the Binding Authority Agreement between Career General and PICC Branch, there could be no Reinsurance Binder Agreements between Plaintiffs and PICC. ECF No. 24 at 16:7–10; 31:20–21.

Plaintiffs paid millions of dollars in premiums to PICC, and PICC accepted those premiums. ECF No. 6 ¶ 20. Plaintiffs paid millions of dollars on claims submitted by its insureds and, in turn, submitted millions of dollars in claims for reinsurance under the Reinsurance Binder Agreements to PICC. *Id.* ¶¶ 23–32. PICC received those claims and paid millions of dollars to Plaintiffs in partial satisfaction of some of those reinsurance claims. *Id.*; *see also Defs.' Mot. Extend Time to Answer* 2, ECF No. 11. Plaintiffs subsequently demanded millions of dollars of additional payments on allegedly unpaid or partially paid reinsurance claims. ECF No. 6 ¶¶ 26–32.

### C.  Procedural Background

Plaintiffs filed an initial complaint on December 6, 2023, and a First Amended Complaint on February 13, 2024. ECF Nos. 1, 6. Plaintiffs filed a Return of Summons on February 14, 2024, attesting to the in-person service of copies of the Summons and Complaint on the registered agent of Nyemaster. *Aff. of Service* 2–3, ECF No. 7. Then, on March 1, 2024, Plaintiffs filed an "Affidavit of Compliance with Iowa Code § 617.3" attesting to: 1) the filing of the summons and

4

complaint with the Iowa Secretary of State, as a default agent for foreign corporations under Iowa law, and 2) the mailing of the same to five addresses. ECF No. 8.[2]

Defendants filed the present pre-answer motion to dismiss on May 24, 2024, alleging insufficient process and insufficient service of process, resulting in an alleged lack of personal jurisdiction. Defs.' Mot. Dismiss ¶ 1, ECF No. 13 (citing Fed. R. Civ. P. 12(b)(2), (4), and (5)). Defendants argue service upon the designated Iowa agent was ineffective because neither PICC nor Plaintiffs were parties to the Binding Authority Agreement containing the agent's appointment. ECF No. 13-1 at 7. That agreement was between Career General and PICC Branch. *Id.* at 6–12. Defendants also argue the present complaint asserts breaches of Reinsurance Binding Agreements, not breaches of the Binding Authority Agreement, such that the present dispute is not a dispute "between [Career General and PICC Branch] arising under, out of or in connection with" the Binding Authority Agreement. ECF No. 13–3 at 2; Defs.' Reply Supp. Mot. Dismiss 3–4, ECF No. 15. Separately, Defendants argue Plaintiffs failed to achieve service under § 617.3 because Plaintiffs used incorrect addresses when mailing notices of their Iowa Secretary of State filing to China. ECF No. 13-1 at 8–9. Finally, Defendants argue that, regardless of their other arguments, the Hague Convention provides the exclusive means for serving process on a Chinese company. *Id.* at 9–12.

After repeated rounds of briefing, as requested by the parties, the Court held an in-person hearing on this matter. Mot. Hr'g Mins., ECF No. 23. At the hearing, Defendants' counsel informed the Court that if dismissal were denied, Defendants are also seeking, in the alternative, an order requiring Plaintiffs to serve process through China's central authority pursuant to the

---

[2] Plaintiffs mailed copies of the summons and complaint to: 1) PICC Branch at an address in Shenzhen, China; 2) PICC Branch "as agent for PICC" at an address in Shenzhen, China; 3) PICC at an address in Beijing, China; 4) PICC at a second address in Beijing, China; and 5) PICC at an address in Hong Kong. ECF No. 8 at 1–2.

5

Hague Convention. ECF No. 24 at 4:17–19. The motion is ripe for adjudication.

### III.    LEGAL STANDARD

"If a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). On a motion to dismiss for insufficient process under Rule 12(b)(4) or insufficient service of process under Rule 12(b)(5), a plaintiff "'must establish prima facie evidence' that there was sufficient process and service of process" by showing "service was valid under governing law." *Tolston v. Iowa City*, No. 3:21-cv-00015-SMR-SHL, 2021 WL 6752240, at *2 (S.D. Iowa Sept. 14, 2021) (quoting *Northrup King. Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)); *see also Northrup King Co.*, 51 F.3d at 1387 ("Although [the plaintiff] bore the ultimate burden of establishing at trial by a preponderance of the evidence . . . sufficiency and service of process, at [the pre-answer motion to dismiss stage] it was required to establish only a prima facie case."). "While a court must necessarily review affidavits outside of the pleadings when addressing a motion to dismiss pursuant to Rule 12(b)(4) or 12(b)(5), this does not convert the motion to dismiss to one for summary judgment." *Seretse v. Andersen Corp.*, Case No. 12-cv-323 (SRN/TNL), 2013 WL 2434876 at *4 (D. Minn. June 4, 2013) (citing *Hahn v. Bauer*, No. 09-cv-2220 (JNE/JJK), 2010 WL 396228, at *5 (D. Minn. Jan. 27, 2010)). Rather, the Court must make a factual assessment as to the sufficiency of service. *Id.* Ultimately, if the Court finds service lacking, the Court holds discretion "[w]hether to dismiss an action for untimely service or extend the time for service under Rule 4(m)." *Id.* (citing *Kurka v. Iowa Cnty.*, 628 F.3d 953, 957 (8th Cir. 2010)); *see also Colasante v. Wells Fargo Corp.*, 81 F. App'x 611, 612–13 (8th Cir. 2003) (per curiam) (same).

The Federal Rules of Civil Procedure set forth permissible means for serving individuals and corporations. *See, e.g.*, Fed. R. Civ. Pro. 4(e)(1) (serving an individual in the manner provided

by state law in the jurisdiction); Rule 4(e)(2)(c) (serving an individual through an appointed agent in the jurisdiction); Rule 4(h)(1)(A) (serving a corporation in the manner provided by state law in the jurisdiction for serving an individual); Rule 4(h)(1)(B) (serving a corporation through an agent "authorized by appointment . . . to receive service of process"). Rule 4(f) specifically sets forth permissible means for service upon individuals in foreign countries, and Rule 4(h)(2) states most forms of service allowed for individuals in foreign countries may be used to serve corporations in foreign countries, other than personal delivery in the foreign country.

## IV.   Discussion

Defendants appear to focus exclusively upon Rules 4(f)(1) and 4(h)(2) in urging the Court to hold the Hague Convention provides the sole means for serving process upon Chinese entities. *See* Fed. R. Civ. P. 4(f)(1) (authorizing service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents"); Rule 4(h)(2) (referring to Rule 4(f) for service upon corporations outside a United States judicial district); ECF No. 13-1 at 5–6. Defendants also cite *Volkswagenwerk Aktiengesellschaft v. Schlunk*, for the proposition that "[b]y virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." 486 U.S. 694, 699 (1988) ("*Schlunk*"); ECF No. 13-1 at 11. Plaintiffs, in turn, argue they completed service by two permissible means. ECF No. 14 at 2 (service upon an appointed domestic agent pursuant to Rule 4(h) and service through the Iowa Secretary of State pursuant to Iowa Code § 617.3).

*Schlunk* did not announce an unqualified rule regarding the scope and pre-emptive power of the Hague Convention. Rather, the Supreme Court held the Hague Convention serves as the exclusive means of service in "circumstances in which there is 'occasion to transmit' a complaint 'for service abroad.'" *Schlunk*, 486 U.S. at 700 (quoting 20 U.S.T. at 362). The Supreme Court

specifically held, on the facts before it, that the Hague Convention does not apply when service upon a foreign corporation is effected through a domestic agent; with such service, there is no "occasion" for a plaintiff to "transmit" judicial documents abroad. *See id.* at 707 ("Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications. Whatever internal, private communications take place between the agent and a foreign principle are beyond the concerns of this case."). In *Schlunk*, the agent at issue was an American subsidiary corporation of a German corporation. *Id.* at 695–97. The applicable state law in *Schlunk* (Illinois law) made the American subsidiary a service agent. *Id.* at 697, 706.

Based on *Schlunk*, the Court concludes the sufficiency of service on Defendants via personal service on the contractually designated agent determines the applicability or inapplicability of the Hague Convention.[3] The sufficiency of service through this method, in turn, depends on the scope and applicability of the appointment provision in the Binding Authority Agreement. Aside from challenging the scope and applicability of the appointment provision, Defendants do not otherwise challenge the manner in which Plaintiffs effected service upon the agent. For two reasons, the Court concludes the appointment of Nyemaster as service agent binds the present parties and applies to the present dispute.

First, the actions of PICC, PICC Branch, Career General, and Plaintiffs—coupled with the absence of evidence or assertions supporting a distinction in the corporate identities of PICC and PICC Branch—strongly support Plaintiffs' assertions that PICC and PICC Branch are not separate entities and that the appointment of Nyemaster is a contractual term understood to apply to the Reinsurance Binding Agreements created under the Binding Authority Agreement. The Binding

---

[3] The Court makes no determination regarding the interactions between Iowa Code § 617.3 and the Hague Convention.

8

Authority Agreement identified PICC Branch as the "Underwriters" using plural language which lacks explanation if PICC Branch were construed to be a separate, individual entity. ECF No. 13-3 at 1. The Binding Authority Agreement authorized Career General to bind PICC Branch as a reinsurer, *id.*, but Career General subsequently bound "PICC" specifically, and not "PICC Branch," in all of the Reinsurance Binding Agreements. ECF No. 14-2 ¶ 10. This course of performance demonstrates PICC's acquiescence in Career General and Plaintiffs' treatment of PICC and PICC Branch as interchangeable rather than as separate corporate entities. *See id.* at 10–11 ("Each such Reinsurance Binder Agreement identified 'PICC Property and Casualty Co. Ltd.' as the 'Reinsurer' and 'GuideOne Mutual Insurance Company' or 'GuideOne National Insurance Company' as its 'Reinsured'. . . . Each Reinsurance Binder Agreement states: 'Career General Agency, LCC is an authorized Coverholder for PICC Property and Casualty Co. Ltd. pursuant to Agreement No. RPF200400', which is an express reference to the B[inding]A[uthority]A[greement].'"); *see also Pilsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008) (recognizing that "'[w]herever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade.'" (alteration in original) (quoting Restatement (Second) of Contracts § 202(5) (1979))). PICC's subsequent acceptance of millions of dollars in premiums from Plaintiffs—and payment of millions of dollars in claims to Plaintiffs—further illustrate the fact that, although PICC Branch and Career General signed the Binding Authority Agreement, PICC understood that it had extended authority to Career General, to bind PICC as a reinsurer. *Cf. Pilsbury Co.*, 752 N.W.2d at 436. And Plaintiffs relied on that authority. The Reinsurance Binding Agreements, after all, expressly declared that authority for entering into such agreements came from the Binding Authority Agreement. ECF No. 14-2 ¶ 11. Simply put, and as Defendants' counsel acknowledged at the hearing, there could be no

Reinsurance Binding Agreements without the Binding Authority Agreement.[4] ECF No. 24 at 16:7–10. Just as the Reinsurance Binding Agreements bind PICC to the appointment clause, Plaintiffs may invoke that clause.

Second, and in the alternative, the Court concludes Iowa would approve of the "related-party" doctrine in this setting to permit use of the agent-appointment clause in the Binding Authority Agreement. *Cf. Rucci v. City of Pacific*, 327 F.3d 651, 652–53 (8th Cir. 2003) ("If [a state] Supreme Court has not addressed the issue before us, we must ascertain what rule [it] would apply."). Under the related-party doctrine, courts (including this court) have held that non-signatories and non-parties to contracts are bound to forum selection clauses based on: 1) the closeness of their relationship with a contracting party; and 2) the foreseeability of being hailed into that forum for the dispute at issue. *See Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) (holding a non-signatory "without question, 'closely related' to the disputes arising out of the agreements and properly bound by the forum-selection provisions." (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." (citation omitted))); *see also Miljas v. Greg Cohen Promotions, LLC*, 536 F. Supp. 3d 409, 419 (S.D. Iowa 2021) ("The closely related party doctrine can be applied to non-signatory plaintiffs and defendants alike"); *Nutriquest, LLC v. Heckman Mgmt. Corp.*, No. 4:20-cv-00169-JAJ, 2020 WL 13576762, at *3 (S.D. Iowa Sep. 1, 2020) ("A 'closely related' party may be bound by the forum selection clause whether he is a plaintiff, asserting a claim, or he is a defendant." (quoting *Marano Enters.*, 254 F.3d at 757)); *Holtzman v.*

---

[4] Whether examining this issue through the lens of contract interpretation and a course of performance or through a theory of apparent agency, the Court reaches the same conclusion. *See, e.g., Frontier Leasing Corp. v. Links Engr'g, LLC*, 781 N.W.2d 772, 776 (Iowa 2010) ("Apparent authority is authority the principal has knowingly permitted or held the agent out as possessing.").

*Vill. Green Mgmt. Co., LLC*, No. 2:19-cv-11150, 2020 WL 264331 (E.D. Mich. Jan. 17, 2020) ("[A] non-signatory to a contract may be bound by a forum-selection clause in that contract 'if the non-signatory is so sufficiently "closely related" to the dispute that it is foreseeable that the party will be bound.'" (citation omitted)); *CruiseCompete, LLC v. Smolinski & Assocs., Inc.*, 859 F. Supp. 2d 999, 1012 (S.D. Iowa 2012) (stating that because the defendant was "the CEO, owner, and President of [the contracting party] and executed the [contract] on behalf of [the contracting party], [it] should have been entirely foreseeable . . . that he was sufficiently related to [the] relationship with Plaintiff that he would be bound by the forum selection clause").

Defendants argue these cases are not persuasive because they involved forum selection clauses whereas the present case involves the appointment of a service agent in addition to a forum selection clause. Defs.' Reply Supp. Mot. Dismiss 1, ECF No. 15. Defendants' arguments in this regard, however, disregard the jurisdictional consequences of forum selection clauses. Forum selection clauses frequently serve as waivers concerning personal jurisdiction or factor into minimum contacts analyses. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). For the reasons stated above, Plaintiffs and Career General, as parents and subsidiary acting in concert under the authority of the Binding Authority Agreement, are sufficiently closely related to one another and the present disputes to permit Plaintiffs to invoke the agent-appointment clause in the Binding Authority Agreement signed by Career General. Similarly, even if there were a difference in formal corporate identity as between PICC and PICC Branch, those parties, too, are sufficiently closely related to bind PICC to the agent selection clause.

Finally, to the extent Defendants challenge the present dispute as not qualifying under the Binding Authority Agreement as a dispute over "matter between [Career General and PICC Branch] arising under, out of or in connection with the Agreement," the Court rejects their challenge. The Court has adequately addressed whether the present dispute is a dispute "between"

qualifying parties. And the Court concludes the disputes over the Reinsurance Binding Agreements at the heart of this action qualify as disputes "in connection with" the Binding Authority Agreement. *See* ECF No. 24 at 16:7–10 (Defendants' counsel agreeing that without the Binding Authority Agreement between Career General and PICC Branch, there could be no Reinsurance Binder Agreements between Plaintiffs and PICC).

## V.  CONCLUSION

Plaintiffs have made the necessary prima facie showing of service upon Nyemaster as the Defendants' appointed agent. The Hague Convention does not apply, and the Court makes no comments as to the relationship between Iowa Code § 617.3 and the Hague Convention.

**IT IS ORDERED** that Defendants PICC Property and Casualty Company, Ltd., Shenzhen Branch, and PICC Property and Casualty Company, Ltd.'s Pre-Service Motion for Dismissal, ECF No. 13, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants PICC Property and Casualty Company, Ltd., Shenzhen Branch, and PICC Property and Casualty Company, Ltd.'s **ANSWER is DUE** in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated this 6th day of September, 2024.

Rebecca Goodgame Ebinger
United States District Judge